FILED
2025 Feb-04 PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **DARIN WHITCHURCH, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:23-cv-00489-RDP** |
| | } | |
| **MICHAEL DANNY MULKEY, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiffs' Motion for Leave to Supplement & Amend Complaint (Doc. # 54) and Defendants' Motion to Dismiss (Doc. # 56). These Motions have been fully briefed and are ripe for a decision. (*See* Docs. # 54, 62, 68, 56, 57, 67).[1] For the reasons discussed below, Plaintiffs' Motion for Leave to Supplement & Amend Complaint (Doc. # 54) is due to be denied, and Defendants' Motion to Dismiss (Doc. # 56) is due to be granted.

## I.    Background

The genesis of this case is a dispute between Plaintiffs and their contractor, Defendant Michael Danny Mulkey ("Mulkey"), over the cost of construction of Plaintiffs' residence in Cedar Bluff, Alabama. (Doc. # 18). Plaintiffs allege that Defendants engaged in a scheme to overbill Plaintiffs for the construction of their residence by (1) falsely representing that Mulkey was an Alabama licensed contractor, (2) entering into an agreement to build Plaintiffs' residence in exchange for the cost of construction plus a ten percent fee, and then (3) falsifying invoices to inflate construction costs. (*Id.* at 1).

---

[1] The court notes that the briefing on these motions has not been in accordance with Exhibit B of the Initial Order (Doc. # 12). As of the date of this Memorandum Opinion and Order, Defendants' Replies to both of Plaintiffs' Responses (Docs. # 67, 68) were due and have not been filed. Therefore, the court proceeds as if this case were under submission.

According to Plaintiffs, multiple Defendants were involved in the alleged scheme. (*Id.* at 4). At the time Plaintiffs hired Mulkey as their general contractor, he was doing business through two different corporations, both named Mulkey, Inc. (*Id.* at 2-5). One is a Georgia corporation ("Mulkey, Inc. of Georgia"), and the other is an Alabama corporation ("Mulkey, Inc. of Alabama"). (*Id.*). Plaintiffs named Mulkey, Inc. of Georgia as a Party-defendant in this case, but not Mulkey, Inc. of Alabama. (*Id.*). According to Plaintiffs, Mulkey, Inc. of Alabama is merely a "shell corporation" with no employees or assets. (*Id.*).

Defendant D. Mulkey, LLC is an Alabama limited liability company formed in 2020. (*Id.* at 4). Mulkey is its Manager. (*Id.* at 5). Plaintiffs allege that monies they paid on fraudulent invoices were "funneled" through D. Mulkey, LLC. (*Id.* at 4).

Plaintiffs also brought claims against Mulkey's family members. Defendant Robin Mulkey is Mulkey's wife and the CFO of Mulkey, Inc. of Georgia. (*Id.* at 4-5). Defendant Michael Daniel Mulkey, Jr. ("Daniel Mulkey") is Mulkey's son, the Secretary of Mulkey, Inc. of Georgia, and an employee of D. Mulkey, LLC. (*Id.*). Defendant Sarah Mulkey is Mulkey's daughter and an employee of Mulkey, Inc. of Georgia. (*Id.*). Plaintiffs contend that Defendants Robin, Daniel, and Sarah Mulkey participated in the alleged scheme by preparing fraudulent invoices and presenting them. (*Id.* at 8-9).

Plaintiffs have asserted the following claims against all Defendants: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; (2) Misrepresentation and Fraud; (3) Deceptive Trade Practices; (4) Neglect Per Se; and (5) Unjust Enrichment. (*Id.* at 16-19).

Specific to the RICO claim, Plaintiffs allege that Defendant Mulkey, Inc. is an "enterprise" (*id.* ¶ 22), and that "Defendants conducted and participated in the conduct of Mulkey Inc.'s affairs through a pattern of racketeering activity." (*Id.* ¶ 23). The allegations describe how Chief Financial Officer Robin Mulkey "regularly wrote herself checks and transferred monies from the Mulkey Inc. operating account to her personal account." (*Id.* ¶ 34). Plaintiffs also allege that employee Sarah Mulkey "created fraudulently inflated paper invoices, which were not part of the revenues reported in the general ledger of Mulkey Inc. and caused those invoices to be sent to customers . . . through the United States Postal Service." (*Id.* ¶ 35). Plaintiffs further allege that they received one such paper invoice from Sarah Mulkey on January 22, 2023. (*Id.* ¶ 41(a)).

Plaintiffs further allege that Mulkey, Inc. sent $16,000 in cash to Judy Mulkey (Michael Danny Mulkey's mother) to repay her for a loan she gave to the business, indicating that the "cash payments made to the mother originated from the monies the defendants were skimming in the overpayments made by the plaintiffs and others." (*Id.* ¶ 36(a)-(c)). Their Complaint also alleges that Mulkey, Inc. sent invoices to non-party Margaret Champion for "Firebox and 12' of flue pipe" (*id.* ¶ 49), as well as for "topsoil" (*id.* ¶ 50), and "2 painters" (*id.* ¶¶ 51-53). And, that while the invoice displayed the "General Contractor Fee" as "8%," the charges for the fireplace, topsoil, and painters exceeded that amount. (*Id.* ¶ 47).

Plaintiffs also contend that "the monies the defendants skim and embezzle through the overbilling scheme are then funneled to the failing dumpster rental business, D. Mulkey LLC." (*Id.* ¶ 36). They further allege that "D. Mulkey LLC['s] bank records show the dumpster rental business is[, ]or at least was, during the same time period the defendants engaged in the plaintiffs' construction, upside down, in the red, every month" (*id.* ¶ 36(d)) and that Defendants embezzled money from "Mulkey, Inc." to cure this insolvency. (*Id.*). Plaintiffs allege that Mulkey "emailed

the plaintiff" to offer to build Plaintiffs' house for "cost plus 10%," forming an "agreement." (*Id.* ¶ 27). Plaintiffs further allege that Michael Danny Mulkey and Robin Mulkey hand-delivered a fraudulent invoice, which Plaintiffs partially paid by immediately tendering a cash payment by hand. (*Id.* ¶ 42(a)).

The Complaint also asserts that Robin Mulkey "was responsible for presenting paper invoices to the customers," "paid vendors and subcontractors for materials and labor," and "regularly wrote herself checks and transferred monies from the Mulkey Inc. operating account to her personal account." (*Id.* ¶ 34). The Complaint alleges that Daniel Mulkey "after conspiring with the others to execute the fraud using the internet . . . was largely responsible for generating the fraudulently inflated invoices through a QuickBooks program whereas the invoices were then emailed to the prospective customers." (*Id.* ¶ 33).

This case was originally filed in federal court on April 14, 2023. (Doc. # 1). On July 5, 2023, the court stayed this case, acknowledging that a parallel state action was pending in the Circuit Court of Cherokee County, Alabama. *Whitchurch v. Mulkey*, No. CV-2021-9000020.00 (the "State Action").

That case had been set for a trial on Plaintiffs' claims that substantially overlapped with their claims asserted in this action. (Doc. # 31). Indeed, a close review of the two actions show that Plaintiffs' claims in the State Action arose from the same facts and circumstances alleged in Plaintiffs' federal Complaint – namely, the alleged scheme to overbill Plaintiffs for the construction of their residence. (St. Doc. # 28).[2] Plaintiffs asserted the following claims in the State Action: (1) Impersonating a licensed contractor in violation of Alabama Code §§ 34-8-1 and

---

[2] The court refers to documents in the instant federal action as "Doc." and documents in the State Action as "St. Doc."

34-8-6; (2) Engaging in the business of general contracting in Alabama without a license in violation of Alabama Code § 34-14A-14; (3) Fraud; (4) Negligence; (5) Willful and Wanton Conduct; (6) Violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-10; and (7) Violation of RICO. (*Id.*); (St. Doc. # 519).

The only Defendants in the State Action were Mulkey, Inc. of Alabama and Michael Danny Mulkey. Plaintiffs moved to amend their state complaint to add Mulkey, Inc. of Georgia as a defendant, as well as Robin, Daniel, and Sarah Mulkey. (Doc. # 21-2). But, for reasons that cannot be discerned by this court, the state court denied Plaintiffs' motions. (*Id.*). Plaintiffs then filed a Petition for Writ of Mandamus with the Alabama Supreme Court challenging the denial of leave to amend their complaint, as well as other orders. (Doc. # 21-4). The Alabama Supreme Court issued an Order denying this petition on July 11, 2023. *Ex parte Whitchurch & Whitchurch*, SC-2023-0311 (Ala. 2023). On July 31, 2023, the state court indicated that it would dismiss the claim for impersonating a licensed contractor in violation of Alabama Code §§ 34-8-1 and 34-8-6 because § 34-8-7 specifically exempts "construction of any residence or private dwelling" from the requirements of that chapter. (Doc. # 57-2 at 1-2 (citing Ala. Code § 34-8-7(a)(2)).

After those pretrial rulings, the State Action proceeded to trial. At the conclusion of the jury trial on August 9, 2023, the jury rendered a verdict in favor of Defendants on the issues of Wantonness, Fraud, Negligence, and Conversion. (*See* Docs. # 57-5; 57-6). After the State Action had concluded and the period for appealing the jury verdict had passed on November 22, 2024, the court lifted the stay in this federal case. (Doc. # 53). The court also ordered Plaintiffs to address whether the claims pending at that time in this action could go forward. (Doc. # 61).

Defendants have moved to dismiss the claims in this case asserted against them. In contrast, Plaintiffs moved this court for leave to supplement and amend their Complaint (Doc. # 54), seeking

to add four new claims against four new Defendants. The new claims are styled: relating to obstruction, witness tampering, destruction and fabrication of evidence, and civil rights violations. (*Id.* at 18-25). These claims are asserted against two attorneys and two law firms that represented two of the Defendants in the State Action, and they relate to the attorneys' and firms' alleged wrongdoings in the State Action. (*Id.*).

## II.    Standard of Review

### A.    Motion to Amend and Supplement Complaint Under Rules 15(a)(2) and 15(d)

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires" Fed. R. Civ. P. 15(a)(2). Rule 15(d) further provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "[H]owever this is not an automatic right." *Fraser v. Sears, Roebuck & Co.*, 674 F.2d 856, 859-60 (11th Cir. 1982) (citation omitted). For example, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such a statement would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004). "Leave to amend is futile when the newly amended complaint would still be properly dismissed." *Walker v. Sec'y of the Army*, 2024 WL 4635382, at *3 (11th Cir. Oct. 31, 2024) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

Additionally, "while the court's discretion is broad" to grant motions to supplement under Rule 15(d), "it is not unlimited." *W. Ala. Women's Ctr. v. Miller*, 318 F.R.D. 143, 148 (M.D. Ala. 2016). Where a supplement adds new parties and relies on transactions, occurrences, and events which happened after the filing of the original complaint, Rule 15(d) permits the supplement if the

new transactions "were alleged to have occurred as part of" continued actions connected to the original complaint. *See Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226-27 (1964) (holding that Rule 15(d) permitted supplements to complaint about continued efforts to avoid desegregation efforts). Courts in this circuit have interpreted this as a "willingness to allow plaintiffs to supplement complaints with new claims that arise after the filing of the action when those claims are *related to* the claims in the original complaint." *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1330 (N.D. Ala. 2005) (citing *Griffin*, 377 U.S. at 226) (emphasis added). Therefore, Rule 15(d) should not be used to introduce a "separate, distinct and new cause of action." *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (quoting *Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101, 102 (D. Mo. 1939)); *see also* 6A Fed. Prac. & Proc. Civ. § 1510 (3d ed.) (2024) (noting that "a motion under Rule 15(d) has been denied because the claim or defense asserted in the supplemental pleading bore little or no relationship to the original pleading").

When determining whether a supplement will promote judicial efficiency, which is "the goal of Rule 15(d)," courts assess "whether the entire controversy between the parties could be settled in one action . . . ." *Neely*, 130 F.3d at 402 (quoting 6A Fed. Prac. & Proc. Civ. § 1506 (2d ed.) (1990)). Analysis under Federal Rule 15(d) is therefore conducted in conjunction with analysis under Federal Rule 20(a)(2), which permits joinder of defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and* (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B) (emphasis added); *cf. Amerson v. Smith*, 2024 WL 3558735, at *4 (M.D. Ga. July 23, 2024) (analyzing a motion to supplement under Rule 15(d) in conjunction with Rule 20). The Eleventh

Circuit interprets the joinder requirement that matters arise out of the same transaction or occurrence as a "logical relationship" test. *See Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). "Under this test, there is a logical relationship when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'" *Id.* (quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)).

The Eleventh Circuit has also held that a district court does "not abuse its discretion by refusing to allow [a plaintiff] to expand the scope if its lawsuit by asserting an entirely new theory of recovery" at a late date in the lawsuit, particularly where the plaintiff "could raise the new claims in another lawsuit." *Schwartz v. City of Treasure Island*, 544 F.3d 1201, 1229 (11th Cir. 2008) (citing *Cason v. Seckinger*, 231 F.3d 777, 787 (11th Cir. 2000), *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)).

**B.      Motion to Dismiss Under Rule 12(b)(6)**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

## III.    Analysis

### A.    Motion to Amend Complaint Under Rule 15(a)

After careful review, and for the reasons stated below, the court concludes all of Plaintiffs' proposed amendments to their claims against **the existing Defendants** in the Complaint are futile considering the effects of collateral estoppel and res judicata. The court addresses those claims, in turn, below.

### 1.    Neglect Per Se

Neglect per se is not, to the court's knowledge, a recognized cause of action in Alabama, and Plaintiffs cite no case law to allow the court to ascertain what cause of action they are intending to bring. However, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1993). Therefore, the court construes this claim as negligence per se and evaluates it as such below.

### 2.    Collateral Estoppel

Federal courts must apply the rendering state's law of preclusion when considering whether to preclude state court judgments under collateral estoppel. *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). Because an Alabama state court rendered the judgment in the State Action, this court applies Alabama law of collateral estoppel. In Alabama, collateral estoppel "bars a party from relitigating 'an issue identical to the one litigated in the prior suit' when 'resolution of the issue was necessary to the prior judgment' and the parties are the same." *Harris v. Hicks*, 374 So. 3d 676, 680 (Ala. 2022) (quoting *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 726 (Ala. 1990)). The elements of collateral estoppel in Alabama are: "(1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties." *Bonner v. Lyons, Pipes & Cook, P.C.*, 26 So. 3d 1115, 1121 (Ala. 2009) (quoting *Dairyland*, 566 So. 2d at 726) (cleaned up).

The claims contained in Plaintiffs' proposed Second Amended Complaint filed in this court (Doc. # 54-1) that may be barred by collateral estoppel include state law claims of misrepresentation and fraud, and negligence/neglect per se. The State Action involved state law

claims of operating as an unlicensed contractor, wantonness, fraud, negligence, and conversion. (Docs. # 57 at 3; 57-5 at 1-2). The state court dismissed the claim for operating as an unlicensed contractor under Alabama Code §§ 34-8-1 and 34-8-6 because the statute in § 34-8-7 exempts residential construction.[3] (Docs. # 57 at 3; 57-2 at 1-2). A jury rendered a verdict against Plaintiffs on all remaining state law claims, and the state court entered a final judgment of dismissal based on the jury verdict. *See Whitchurch et al. v. Mulkey et al.*, 13-cv-2019-900020 (Cir. Ct. Cherokee Cnty. Aug. 8, 2023); (Doc. # 57-5 at 1-2).

The first element of collateral estoppel is met because the issues of misrepresentation and fraud and negligence per se are identical to decided issues in the State Action. These include the issues of fraud, negligence, and impersonating a licensed contractor in violation of Alabama Code §§ 34-8-1 and 34-8-6. To prove misrepresentation and fraud in Alabama, a plaintiff must establish "1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 422 (Ala. 1997) (citing Ala. Code § 6-5-101). These are identical to the elements for a simple fraud claim in Alabama. *See Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014) (quoting *Coastal Concrete Co. v. Patterson*, 503 So. 2d 824, 826 (Ala. 1987)). Therefore, they are the same issue for purposes of collateral estoppel.

---

[3] As discussed below, this claim also is barred by res judicata. Plaintiffs advanced this claim in the State Action. The state court warned that if Plaintiffs did not provide "legal authority that allows them to maintain this cause of action by close of business August 3, 2023 . . . this claim will be dismissed." (Doc. # 57-2 at 2). Plaintiffs did not allege that they presented any legal authority to respond to this language. Further, the jury verdict form did not include this claim, indicating that it was dismissed on its merits due to a failure to present adequate legal evidence. Plaintiffs did not appeal this dismissal, and therefore this was a final judgment on the merits.

If Plaintiffs intended to assert a negligence per se claim, the elements of such a cause of action are "(1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury." *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Aa. 2009) (quoting *Dickinson v. Land Devs. Constr. Co.*, 882 So. 2d 291, 302 (Ala. 2003)).

In the State Action, Plaintiffs asserted claims of negligence and impersonating a licensed contractor in violation of Alabama Code §§ 34-8-1 and 34-8-6. The issues involved in the state law claims advanced here sufficiently mirror elements of the negligence per se claim such that they are the same claim for purposes of collateral estoppel. For example, the state court claim of impersonating a licensed contractor mirrors the negligence per se element that "the defendant violated the statute" requiring licensure. (*See* Doc. # 18 ¶ 61 (alleging in the instant case that Defendants violated a statute related to contractor licenses)).

The elements of the state law claim of negligence mirror the remaining elements of the negligence per se claim. The state law claim of negligence includes the following elements: "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) (quoting *Lemley v. Wilson*, 178 So. 3d 834, at 841-42 (Ala. 2015) (in turn quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994))). The negligence issue of when a party owes a duty to a foreseeable plaintiff mirrors the negligence per se issues of whether "the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged" and whether "plaintiff's injury was the kind of injury contemplated by the statute." *Rebar*, 28 So. 3d at 726. The negligence issue of a breach of

that duty mirrors the negligence per se issue of whether "the defendant violated the statute." *Id.* And, the negligence issues of proximate causation and injury mirror the negligence per se issue of whether "the defendant's violation of the statute proximately caused the plaintiff's injury." *Id.*

The second element of collateral estoppel is met because these issues were litigated and decided, resulting in a dismissal on the merits of the claim relating to operating as an unlicensed contractor, as well as a final judgment by the state court on the other relevant state law claims. (*See* Docs. # 57-2 (dismissing claim of operating as an unlicensed contractor); 57-6 at 1 (entering judgment in favor of Defendants "[i]n accordance with the jury's verdict")). The claim of operating as an unlicensed contractor was litigated and decided on the merits because the trial court concluded that the statute exempted residential construction from its coverage. (Doc. # 57-2 at 1-2 (citing Ala. Code § 34-8-7)). The remaining state law claims were also litigated and decided on the merits because a jury rendered a verdict finding that Plaintiffs had not established the required elements of the fraud or negligence.

The third element of collateral estoppel is met because it was necessary for the court to resolve the issue of whether Plaintiffs can bring a claim for operating as an unlicensed contractor before dismissing this claim on the merits. Further, it is met as to the remaining state law claims as well because the jury must have resolved the issues of fraud, negligence, and impersonating a licensed contractor in order to render its verdict.

Finally, the fourth element of collateral estoppel is met because Plaintiffs are the same parties who litigated the State Action against some of the same Defendants. Because Plaintiffs are the parties *against* whom collateral estoppel is being asserted, this satisfies the "same parties" requirement for collateral estoppel. *See Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402

U.S. 313 (1971). Therefore, collateral estoppel bars the claims of misrepresentation and fraud as well as neglect/negligence per se.

### 3.    Res Judicata

Res judicata is a doctrine that bars a party from asserting a claim that they have already litigated or had an opportunity to litigate. Federal courts apply state law when considering a defense of res judicata, *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990), and in Alabama, the elements of res judicata are "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 635 (Ala. 1998).

Most of the claims in Plaintiffs' proposed Second Amended Complaint (Doc. # 54-1) would be barred by res judicata. These claims include RICO, misrepresentation and fraud, deceptive trade practices under the Alabama Deceptive Trade Practices Act, neglect/negligence per se, and unjust enrichment.

First, the barred claims stemmed from a prior judgment on the merits: a court judgment following a jury verdict and dismissal of one claim on its merits. Plaintiffs dispute this, arguing that the state court's implementation of the judgment was not a final appealable document. (Doc. # 68 at 10). This is incorrect. The final judgment of the state court is just that – a final judgment. *See Formby v. Farmers & Merchs. Bank*, 904 F.2d 627, 630 (11th Cir. 1990) (specifying that although the minute entry of a jury verdict is not a final judgment, the court's entry of judgment is) (citing *Pure Oil Co. v. Boyne*, 370 F.2d 121, 122-23 (5th Cir. 1966)). Plaintiffs also contest whether the dismissal of the claim related to operating as a contractor without a license was a final judgment, quoting the order's language that "[t]he plaintiffs shall provide legal authority that

14

allows them to maintain this cause of action by close of business August 3, 2023; otherwise, this claim will be dismissed." (*See* Docs. # 68 at 12 n.2; 57-2). Plaintiffs have not, however, alleged that they presented any legal authority to respond to this language. Further, the jury verdict form did not include this claim, indicating that it was dismissed on its merits due to a failure to present adequate legal evidence. Plaintiffs further contend that the dismissal of the Alabama Deceptive Trade Practices Act claim was not a final judgment, but this misconstrues why this claim is barred under res judicata. As noted below, this claim is barred because, for purposes of res judicata, it is the same claim as the fraud and conversion claims that undisputedly reached a final judgment.

Second, the parties concede that the state court judgment was rendered by a court of competent jurisdiction.

Third, there is "substantial identity of the parties" even though there are four new Defendants in the federal case, as well as four new proposed Defendants.[4] Three of these Defendants (Sarah Mulkey, Robin Mulkey, and Daniel Mulkey) are employees of Mulkey, Inc. (Doc. # 57-10 at 1-6), and therefore satisfy privity through a principal-agent relationship. *See DeBose v. Ellucian Co., L.P.*, 802 F. App'x 429, 434 (11th Cir. 2019). One of the Defendants (D. Mulkey, LLC) is what Plaintiffs contend to be an alter ego of Mulkey, Inc. and Daniel Mulkey (who was listed as the "organizer" of D. Mulkey, LLC) and therefore is in privity with the Defendants in the State Action. (Doc. # 57-10 at 6). The four proposed new Defendants (Palmour Law Firm; Buttram, Hawkins, & Hooper, LLC; William Hawkins; and Albert Palmour) are attorneys and law firms who represented the parties in the State Action, and therefore are in privity

---

[4] Because it is unclear whether Plaintiffs seek to hold the four new Defendants liable for any of the claims the court concludes are barred under res judicata, for completeness, the court discusses why these four new Defendants are the "same party" for purposes of res judicata such that Plaintiffs cannot relitigate claims they lost in state court against the new Defendants.

with their clients – that is, parties who were bound by the state court judgment. *See Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1327-28 (11th Cir. 2024) (discussing as a factor establishing privity "a substantive legal relationship existed between the person to be bound and a party to the judgment," and "the nonparty assumed control over the litigation in which the judgment was issued").

Plaintiffs challenge the applicability of *Rodemaker* to this case, arguing that *Rodemaker* should be limited to its facts. (Doc. # 68 at 13-14). Alternatively, Plaintiffs argue that the court's application of *Rodemaker*'s reasoning was incorrect because while the board members in *Rodemaker* controlled the board, which established privity between the board and the board members, Defendants in this case did not control defense counsel. (*Id.*).

The court does not need to delve into the facts or reasoning of *Rodemaker* to conclude that defense attorneys and their law firms are in privity with the defendants in the State Action. Alabama law is clear on this point. For res judicata purposes, Alabama "follows an expansive definition of privity, which includes not only a successive interest to the same property right, but also 'an identity of interest in the subject matter of litigation.'" *Wood v. Kesler*, 323 F.3d 872, 877-80 & n.10 (11th Cir. 2003). The Alabama Supreme Court has exposited that "if a party has 'a sufficient "laboring oar" in the conduct' of the litigation, then the principle of res judicata can be actuated." *Century 21 Preferred Props., Inc. v. Ala. Real Est. Comm'n*, 401 So. 2d 764, 770 (Ala. 1981) (quoting *Montana v. United States*, 440 U.S. 147, 155 (1979)). This "laboring oar" exists if the non-party "assume[s] control over litigation . . . ." *Montana*, 440 U.S. at 154; *see Brown v. Brown*, 680 So. 2d 321 (Ala. Civ. App. 1996) (applying this concept in Alabama). There is no question that defense attorneys assumed control over the State Action to a sufficient extent that they had a "laboring oar" in those proceedings; indeed, based on the supplemental allegations

Plaintiffs wish to add to their Complaint, the defense attorneys were intricately involved in the conduct of the State Action. To be sure, by virtue of actually litigating the State Action, defense attorneys could fairly be characterized as the main "laboring oars" in that case.

Alabama law further considers a party in privity for purposes of res judicata if "the relationship between the parties was close enough" and if "adequate notice of the action was received by the alleged privy." *Hughes v. Martin*, 533 So. 2d 188, 191 (Ala. 1988). This applies to a party's attorney, as it is undisputed that defense attorneys would have had "adequate notice" of the action that they were hired to defend. *See Crooked Creek Props., Inc. v. Ensley*, 2009 WL 3644835, at *18 (M.D. Ala. Oct. 28, 2009) (applying this reasoning to a similar fact pattern).

Finally, there is yet another doctrine under Alabama law that establishes privity between defense attorneys and the state court defendants. Alabama has recognized privity in "special relationships," which include an employer-employee relationship but may also include the attorney-client relationship "because the relationship of attorney-client is one of the highest agencies known to the law." *Ensley*, 2009 WL 3644835, at *18 n.20 (citing *In re Hayes*, 183 F.3d 162, 168 (2d Cir. 1999) and *Thompson v. SouthTrust Bank*, 961 So. 2d 876 (Ala. Civ. App. 2007)). In sum, there is ample authority under Alabama law through which to find defense attorneys and their law firms in privity with the state court defendants.

The fourth element of "same cause of action" is governed by the substantial evidence test in Alabama. *See City of Trussville v. Pers. Bd. of Jefferson Cnty.*, 365 So. 3d 322, 330 (Ala. 2022). This test asks "whether substantially the same evidence would support a recovery in both actions." *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 637 (Ala. 1998) (citing string of Alabama Supreme Court cases). Alternatively, the "same cause of action" element applies res judicata "not only to the exact legal theories advanced in the prior case, but to all legal theories and claims

arising out of the same nucleus of operative facts." *Austill v. Prescott*, 293 So. 3d 333, 347 (Ala. 2019) (quoting *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993) (cleaned up)).

The state court determined it did not have jurisdiction over Plaintiffs' RICO claim and Plaintiffs voluntarily dismissed it.[5] Although this was not a final judgment on the merits, the RICO cause of action would be subject to proof by the same evidence as the conversion claim. A RICO claim requires a showing of (1) a violation of 18 U.S.C. § 1962, (2) an injury to business or property, and (3) that the violation caused the injury. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Plaintiffs appear to assert a violation of 18 U.S.C. § 1962(b)[6] or (c),[7] given their pleadings about a pattern of racketeering activity. (Doc. # 54-1 at 22). The court has difficulty understanding why either violation would not involve the same nucleus of operative facts as Plaintiffs' claim for conversion. Under both claims, "racketeering activity" or "collection of an unlawful debt" involve the same nucleus of operative facts as conversion because it would involve the unlawful acquiring or keeping of another's property. Therefore, for these purposes the RICO claim is the "same claim" as the conversion claim, which was subject to a final judgment on the merits in the State Action.

---

[5] Although the issue is not presented here, the court notes that a state court has concurrent jurisdiction over RICO claims. *Tafflin v. Levitt*, 493 U.S. 455, 460 (1990).

[6] "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).

[7] "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

As discussed regarding collateral estoppel, the issues underlying the misrepresentation and fraud and neglect/negligence per se claims were litigated in the previous action, so they are also the same claim for res judicata purposes.

The deceptive trade practices under the Alabama Deceptive Trade Practices Act ("ADTPA") involve the same nucleus of operative facts as Plaintiffs' claims for fraud and conversion. Plaintiffs do not specify which provision of the ADTPA they allege Defendants violated. However, Plaintiffs' five allegations align with the four ADTPA unlawful trade practices listed in Alabama Code § 8-19-5(1), (2), (3), and (17). (*See* Doc. # 18 ¶ 60). These include: (1) "passing off the goods and services of another (Mulkey Construction) as their own (Mulkey Inc.)," (2) "causing confusion or misunderstanding as to the source [of goods or services, Ala. Code § 8-19-5(2),] by hanging the 'Mulkey Construction and Dumpster Rental' sign," (3) "by causing confusion or misunderstanding as to the certification by another, i.e. claiming to have a valid Alabama Home Builder's license under the name Mulkey Construction," (4) "by failing to ship the fireplace after receipt of payment and within 30 days," and (5) "by failing to return the plaintiffs['] refund and credit within ten days." (*Id.*). These allegations involve the same nucleus of operative facts as the fraud or conversion claims advanced in the State Action. The first, second, and third claims all involve the same nucleus of operative facts as fraud because they implicate a misrepresentation of material fact. *See Foremost Ins. Co.*, 693 So. 2d at 422. The fourth and fifth claims involve the same nucleus of operative facts as conversion because they involve unlawfully taking or keeping someone else's property (money). Therefore, the ADTPA claims are the same claims for res judicata purposes as the fraud or conversion claims in the State Action.

Next, the unjust enrichment claim involves allegations about the unjust enrichment of Defendants by overcharging or wrongfully charging Plaintiffs, which arises out of the same

nucleus of operative facts as all four state law claims (wantonness, fraud, negligence, and conversion).

### 4. *Rooker-Feldman* Doctrine

The court's Show Cause Order (Doc. # 61) listed the *Rooker-Feldman* doctrine as an alternative reason for dismissing Plaintiffs' state law claims of misrepresentation and fraud, as well as neglect/negligence per se. But, with the benefit of briefing, the court agrees with Plaintiffs that this doctrine is inapplicable. This is because the Supreme Court has narrowed its application to "the unique facts of the *Rooker* and *Feldman* cases: '[i]n both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Nicholson v. Shafe*, 558 F.3d 1266, 1274-75 (11th Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)); *see also Target Media Partners v. Specialty Marketing Corp.*, 881 F.3d 1270, 1285 (11th Cir. 2018) (discussing this narrowing in *Exxon Mobil*). Even apart from *Rooker-Feldman*, however, for the reasons discussed above, these claims are barred by collateral estoppel and res judicata.

After a review of Plaintiffs' claims under the doctrines of collateral estoppel and res judicata, the newly amended complaint would still be subject to a dismissal. Therefore, the proposed amendments to Plaintiffs' Complaint would be futile and are barred under Rule 15(a)(2). *See Hall*, 367 F.3d at 1262-63; *Walker*, 2024 WL 4635382, at *3 (citing *Cockrell*, 510 F.3d at 1310).

Plaintiffs have argued that denying their Motion would be inappropriate because it would operate as a dismissal with prejudice, even though the court's Show Cause Order had suggested that it might deny the Motion without prejudice. (*See* Doc. # 61 at 6). This is incorrect because it

conflates the two pending Motions. (Docs. # 54, 56). While granting Defendants' Motion to Dismiss (Doc. # 56) would operate as a dismissal *with* prejudice as to those dismissed claims, a denial of Plaintiffs' Motion for Leave to Supplement & Amend (Doc. # 54) would be *without* prejudice, as Plaintiffs would be free to move for such leave again. More importantly, this is a moot point because this action is due to be dismissed with prejudice under the doctrines of collateral estoppel, res judicata, and as discussed further below, failure to state a claim under Rule 12(b)(6).

       **B.**    **Motion to Dismiss**

Defendants' Motion to Dismiss (Doc. # 56) is due to be granted for failure to state a claim. First, as analyzed above, all of Plaintiffs' existing claims are due to be dismissed under the doctrines of collateral estoppel and res judicata. The court will not repeat its analysis as to how these doctrines apply. Second, the Complaint, even if amended, would fail to properly allege a RICO claim because it does not plead sufficient facts under Rule 9(b) of the Federal Rules of Civil Procedure.

In addition to the res judicata bar discussed above, Plaintiffs' RICO claim is due to be dismissed as inadequately pleaded because it does not state with sufficient particularity how each Defendant participated in a pattern of racketeering activity. For completeness, the court has reviewed the allegations in both the Amended Complaint (Doc. # 18) as well as the proposed Second Amended Complaint (Doc. # 54-1) in determining that both versions are inadequately pleaded and therefore subject to dismissal.

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

"Racketeering activity" under § 1961(1)(B) includes "any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery [of witnesses]), [] section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), [] section 1503 (relating to obstruction of justice), [] section 1512 (relating to tampering with a witness, victim, or an informant), [and] section 1956 (relating to the laundering of monetary instruments)." *Id*. § 1961(1)(B).

Plaintiffs alleged a RICO claim based on wire or mail fraud. (Docs. # 18 ¶¶ 57-59; 54-1 at 18 ¶¶ 66-69). Where the predicate act relates to mail or wire fraud, the "alleged predicate acts must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to 'state with particularity the circumstances constituting fraud.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)). Specifically, "a plaintiff must allege that *each* defendant participated in the affairs of the enterprise through a 'pattern of racketeering activity,' which requires 'at least two acts of racketeering activity.'" *Cisneros*, 972 F.3d at 1215 (quoting 18 U.S.C. §§ 1962(c), 1961(5)) (emphasis added). As the Eleventh Circuit has emphasized, "blending the identities of the defendants in [] allegations of fraud . . . is precisely the kind of vagueness in fraud pleadings Rule 9(b) was designed to prevent." *Id.* at 1217 (citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)).

Plaintiffs' allegations of racketeering are impermissibly vague, as they frequently refer to "Defendants" or "Defendant" without specifying how each of the six Defendants *specifically* engaged in the alleged multiple predicate acts of wire or mail fraud. (*See* Docs. # 18 ¶¶ 23, 28-32,

37-41, 42(c)-(d), 43, 45-50, 54-55, 57-59; 54-1 ¶¶ 1-8, 10, 24-27, 29, 32, 36-37, 39-42, 46, 48-49, 51-58, 60-65, 67-68, 73-74, 82-84, 86, 88, 93-94, 104-108). Further, even where the allegations refer to Defendants by name, they are insufficient to establish wire or mail fraud. Below, the court catalogues examples of these deficiencies.

### 1.    Mulkey, Inc.

The Complaint alleges that Defendant Mulkey, Inc. is an "enterprise" (Docs. # 18 ¶ 22; 54-1 ¶ 30), and that "Defendants conducted and participated in the conduct of Mulkey, Inc.'s affairs through a pattern of racketeering activity." (Docs. # 18 ¶ 23; 54-1 ¶ 32). But this assertion does not describe any specific predicate acts of wire or mail fraud by Mulkey, Inc. or any of the other Defendants. The proposed Second Amended Complaint adds some minimal detail to the RICO allegations against Mulkey, Inc., but these are also insufficient under Rule 9(b). The proposed Second Amended Complaint alleges Mulkey, Inc. engaged in racketeering, and that through its employees it "systematically deployed and maintained a practice of: (1) fraudulently adding hours of unworked time to the construction invoices; (2) increasing the hourly wages of the workers . . .; (3) falsely representing the cost of materials . . . ," and then presented those invoices "to the victims via a text message, the US postal services, and/or in person." (Doc. # 54-1 at 2-3). This does not sufficiently allege the details of what Mulkey, Inc. did as part of its alleged mail or wire fraud – details that should at least include dates or identifying information about specific invoices that were sent to Plaintiffs.

Plaintiffs then allege that Chief Financial Officer Robin Mulkey "regularly wrote herself checks and transferred monies from the Mulkey Inc. operating account to her personal account." (Docs. # 18 ¶ 34; 54-1 ¶ 44). But again, this does not describe any particular "acts of racketeering activity" by Mulkey, Inc. *See Cisneros*, 972 F.3d at 1215 (quoting 18 U.S.C. §§ 1962(c), 1961(5)).

Without specificity, the fact that an officer of a corporation wrote herself checks or transferred money from the corporation does not establish that the corporation engaged in mail or wire fraud.

The allegations also describe how employee Sarah Mulkey "created fraudulently inflated paper invoices, which were not part of the revenues reported in the general ledger of Mulkey Inc, and caused those invoices to be sent to customers . . . through the United States Postal Service." (Docs. # 18 ¶ 35; 54-1 ¶ 45). The details of this are unclear. But, to the extent it could be read to allege a predicate act of mail fraud by Sarah Mulkey, it still is unclear how Mulkey, Inc.'s alleged subsequent failure to report invoices as revenue in its general ledger is a predicate act of mail or wire fraud against Plaintiffs.

Plaintiffs allege that Mulkey, Inc. sent $16,000 in cash to Judy Mulkey (Michael Danny Mulkey's mother) to repay her for a loan she gave to the business, indicating that the "cash payments made to the mother originated from the monies the defendants were skimming in the overpayments made by the plaintiffs and others." (Docs. # 18 ¶ 36(a)-(c); 54-1 ¶ 49). This assertion seems to imply that because Plaintiffs allegedly overpaid for their construction work through cash and Mulkey, Inc. repaid a loan in cash, Mulkey, Inc. engaged in mail or wire fraud. However, without more, this allegation is not specific enough to show anything more than the correlation of using the same type of tender.

The Complaint also alleges that Mulkey, Inc. sent invoices to Margaret Champion for "Firebox and 12' of flue pipe" (Docs. # 18 ¶ 49; 54-1 ¶ 85), as well as for "topsoil" (Docs. # 18 ¶ 50; 54-1 ¶ 86) and "2 painters" (Docs. # 18 ¶¶ 51-53; 54-1 ¶¶ 90-93). But, it does not explain why the invoice was fraudulent. It merely states that the invoice displayed the "General Contractor Fee" as "8%" and that the charges for the fireplace, topsoil, and painters exceeded this. (Docs. # 18 ¶ 47; 54-1 ¶ 83). Additionally, Champion is not a party to this case, and therefore even if Mulkey,

Inc. was engaged in mail or wire fraud involving her, it is not clear how this establishes any predicate acts of mail or wire fraud involving or allegedly damaging *Plaintiffs*.

### 2.    D. Mulkey, LLC

The Complaint mentions D. Mulkey, LLC only twice in connection with the RICO claim. First, it alleges that "the monies the defendants skim and embezzle through the overbilling scheme are then funneled to the failing dumpster rental business, D. Mulkey LLC." (Doc. # 18 ¶ 36; *see also* Doc. # 54-1 ¶ 46 (similar but not identical language)). Second, it alleges that "D. Mulkey LLC['s] bank records show the dumpster rental business is/or at least was, during the same time period the defendants engaged in the plaintiffs' construction, upside down, in the red, every month." (Doc. # 18 ¶ 36(d); *see also* Doc. # 54-1 ¶ 50 (similar but not identical language)). It also asserts that Defendants embezzled money from Mulkey, Inc. to cure this insolvency. (*Id.*). None of these allegations indicate that D. Mulkey, LLC engaged in mail or wire fraud. For example, there is nothing that plausibly alleges how having money funneled to them is a predicate act of wire or mail fraud involving or injuring Plaintiffs.

### 3.    Michael Danny Mulkey

Plaintiffs allege that Mulkey "emailed the plaintiff" to offer to build Plaintiffs' house for "cost plus 10%," forming an "agreement." (Docs. # 18 ¶ 27; 54-1 ¶ 36). Plaintiffs also allege that Mulkey hand-delivered a fraudulent invoice, which Plaintiffs partially paid by immediately tendering a cash payment by hand. (Docs. # 18 ¶ 42(a); 54-1 ¶ 58). Even if an allegation that a defendant used email to form a contract and then misrepresented how they were performing that contract might be enough to establish one predicate act of wire fraud, this is the extent of the Complaint's specific allegations against Michael Danny Mulkey. Therefore, the RICO claim fails

to state a claim against Michael Danny Mulkey because Plaintiffs have not pleaded that he committed at least two predicate acts of mail or wire fraud.

### 4.    Robin Mulkey

The Complaint mentions Robin Mulkey only twice by name in connection with the RICO claim. First, it alleges that Robin Mulkey "was responsible for presenting paper invoices to the customers," "paid vendors and subcontractors for materials and labor," and "regularly wrote herself checks and transferred monies from the Mulkey Inc. operating account to her personal account." (Docs. # 18 ¶ 34; 54-1 ¶ 44). Second, it alleges that (as also described above) Robin and Michael Danny Mulkey hand delivered a fraudulent invoice, which Plaintiffs partially paid by immediately tendering a cash payment by hand. (Docs. # 18 ¶ 42(a); 54-1 ¶ 58). The fact that a corporation's officer wrote herself checks or transferred money from the corporation does not establish a predicate offense of mail or wire fraud, and certainly does not illustrate how these actions harmed or defrauded Plaintiffs. Further, delivering a fraudulent invoice by hand does not involve mail or wire fraud, as it was not sent through the postal service or by electronic communications. Therefore, the Complaint does not sufficiently allege any predicate acts of mail or wire fraud by Robin Mulkey.

### 5.    Daniel Mulkey

The Complaint alleges that Daniel Mulkey "after conspiring with the others to execute the fraud using the internet . . . was largely responsible for generating the fraudulently inflated invoices through a QuickBooks program whereas the invoices were then emailed to the prospective customers." (Docs. # 18 ¶ 33; 54-1 ¶ 43). This is insufficient to plead mail or wire fraud by Daniel Mulkey because it does not provide any specific details of what invoices Daniel Mulkey generated, to which prospective customers those invoices were sent, or how they were sent. Although the

Complaint later describes various invoices they received, the word "largely" indicates that there is uncertainty about which invoices Daniel Mulkey generated. Therefore, it is still unclear what predicate acts of mail or wire fraud, if any, Daniel Mulkey specifically performed.

### 6.    Sarah Mulkey

Similarly, the Complaint alleges that Sarah Mulkey "created fraudulently inflated paper invoices, which were not part of the revenues reported in the general ledger of Mulkey Inc, and caused those invoices to be sent to customers, to include the Plaintiffs, via text message as a picture and/or through the United States Postal Service." (Docs. # 18 ¶ 35; 54-1 ¶ 45). It further alleges that Plaintiffs received one such paper invoice from Sarah Mulkey on January 22, 2023. (Docs. # 18 ¶ 41(a); 54-1 ¶ 56). The Complaint does not allege how the paper invoice was sent or received, which could impact whether it asserts a valid predicate act of mail or wire fraud. For example, if Plaintiffs received the paper invoice by hand delivery, it would not be considered mail or wire fraud. And, even if the court construed this allegation to assert an instance of mail fraud, it is only one predicate act rather than the required two. Therefore, Plaintiffs have failed to plead a substantive RICO claim against Sarah Mulkey.

Plaintiffs have failed to adequately plead that any single Defendant engaged in at least two predicate acts of mail or wire fraud, which is required to adequately plead this type of RICO claim. *See Cisneros*, 972 F.3d at 1215 (quoting 18 U.S.C. §§ 1962(c), 1961(5)). Rule 9(b) requires a plaintiff to plead "with particularity the circumstances constituting fraud." *Id.* at 1216 (citing *Am. Dental Ass'n*, 605 F.3d at 1291) (quotation marks omitted). Plaintiffs did not satisfy this heightened bar with respect to any of the Defendants. Therefore, their RICO claim fails to state a claim.

### C.    Motion to Supplement the Complaint under Rule 15(d)

This case presents a unique situation because Plaintiffs seek to substitute new claims against new Defendants because all their existing claims against existing Defendants are due to be dismissed. Indeed, allowing Plaintiffs to supplement their Complaint under Rule 15(d) is the only way these new claims against new parties can survive in this action. For the reasons discussed below, the court declines to exercise its discretion to allow such a supplement.

As stated in the standard of review, "while the court's discretion is broad" to grant motions to supplement under Rule 15(d), "it is not unlimited." *W. Ala. Women's Ctr.*, 318 F.R.D. at 148. Although the plain text of Rule 15(d) does not provide guidelines for granting or denying such motions, federal courts have held that a supplement must be "related to the claims in the original complaint." *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d at 1330 (citing *Griffin*, 377 U.S. at 226). This requirement stems from the interplay between Rule 15(d) and Rule 20(a)(2) for permissive joinder of defendants. *Cf. Amerson*, 2024 WL 3558735, at *4. Under Eleventh Circuit authority, Rule 20 joinder requires that there be a "logical relationship" between the original complaint and the supplement, such that "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Republic Health Corp.*, 755 F.2d at 1455 (quoting *Plant*, 598 F.2d at 1361).

The four new claims of obstruction, witness tampering, destruction and fabrication of evidence, and civil rights violations do not share a nucleus of operative facts with any claims in the original Complaint. These claims relate to conduct that occurred at the State Action trial, not to the claims filed here or tried in the state court. Therefore, the new claims do not have a "logical relationship" with any claims in the original Complaint, and joinder of these new claims against

the new Defendants is not appropriate under Rule 20. Plaintiffs must satisfy the permissive joinder rules of Rule 20 in order to supplement their Complaint under Rule 15(d). Because Plaintiffs' proposed new claims do not satisfy the permissive joinder rules of Rule 20, the court will not permit Plaintiffs to supplement their Complaint under Rule 15(d).

These supplements would not satisfy Rule 20 because the four new claims do not share a nucleus of operative facts with any claims in the original Complaint. Plaintiffs' original claims stem from operative facts related to residential construction on Plaintiffs' home. (*See* Doc. # 18 at 1-2 (alleging that Defendants overcharged Plaintiffs for residential construction), *id.* ¶¶ 18, 20-55, 57-60 (alleging that Defendants engaged in racketeering and deceptive trade practices related to residential construction), *id.* ¶ 56 (alleging that Defendants fraudulently misrepresented various facts in furtherance of the "overbilling scheme" related to residential construction), *id.* ¶¶ 61-62 (alleging Defendants engaged in residential construction without a license), *id.* ¶ 63 (alleging Defendants unlawfully retained Plaintiffs' credit paid related to residential construction)). By contrast, all of the new claims stem from what allegedly occurred during the trial in the State Action. The operative facts underlying the new claims are that defense attorneys and their firms obstructed the state trial process, tampered with witnesses, destroyed and fabricated evidence, and violated Plaintiffs' civil rights. The "aggregate core of facts" upon which the residential construction claims rest would not independently support any of the new claims related to conduct during trial. *See Republic Health Corp.*, 755 F.2d at 1455 (quoting *Plant*, 598 F.2d at 1361).

Indeed, it would be possible to file a case asserting these four new claims without alleging any of the core facts underlying the original claims. Although the new claims stem from a trial about residential construction, that is where the similarities between the new claims and the original claims end. While the original claims require proving facts about what happened *before*

the State Action was filed, all facts necessary to prove these new claims against brand new defendants would have happened *during* the State Action. It is arguably immaterial what the State Action was even about. The new claims bear no logical relationship to the original claims. Thus, joinder of these new claims is not permitted under Rule 20. Because Plaintiffs must satisfy the permissive joinder rules of Rule 20 in order to supplement their Complaint under Rule 15(d), a supplement under Rule 15(d) is inadvisable here.

While Rule 15(d) certainly would permit a supplement that illustrates how new transactions, occurrences, or events occurred as part of continued wrongs *connected* to the original Complaint, *Griffin*, 377 U.S. at 226-27, this is not such a case. Plaintiffs attempt to illustrate how it might be, alleging that the new Defendants "conspired to and did commit numerous tortious and criminal acts in furtherance of the enterprise, participated in the affairs of the enterprise, obstruct[ed] the due administration of justice, and violated the plaintiffs' constitutional rights to due process." (Doc. # 54-1 at 5). These allegations are not specific about what the new Defendants did. Furthermore, the allegations made related to the four new claims against these new potential defendants exclusively relate to the trial of the State Action – not residential construction. (*See id.* ¶¶ 70-81, 95-99). The court reiterates that there is no relatedness or logical relationship between the original claims and the new claims such that a supplement would be permissible or appropriate.

Plaintiffs' new proposed claims should be asserted, if at all, in a new lawsuit. The Eleventh Circuit has held that a district court does "not abuse its discretion by refusing to allow [a plaintiff] to expand the scope if its lawsuit by asserting an entirely new theory of recovery" at a late date in the lawsuit, particularly where the plaintiff "could raise the new claims in another lawsuit." *City of Treasure Island*, 544 F.3d at 1229 (citing *Cason*, 231 F.3d at 787), *Weaver*, 169 F.3d at 1319). This lawsuit has been pending for almost two years. Of course, this is not entirely the fault of the

parties, as the court stayed this federal action during the pendency of the State Action. Nevertheless, it does underline the point that continuing this lawsuit by permitting a supplement that replaces the entirety of the original action with new and unrelated claims would be imprudent.

**IV.    Conclusion**

For the reasons discussed above, the Motion for Leave to Supplement & Amend Complaint (Doc. # 54) is due to denied, and the Motion to Dismiss (Doc. # 56) is due to be granted.

An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this February 4, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE

31